Good morning, your honors. Michelle Anderson on behalf of Mr. McFadden. There are four issues on appeal in this case, and it just came to my attention yesterday that the lead issue is currently pending in a related case, that's U.S. v. Jackson, 08-30321, and I filed notice of related cases yesterday. In that case, similar to the case that occurred just prior, the court has been ordered to respond to a petition for rehearing, and right now it's pending resolution at this point. So I would like to, based on the rule of first submission, focus my time on the other issues in the brief. What's the issue in that case? In Jackson, it's whether or not under 3553A you can depart below a minimum mandatory sentence. In that case, the government moved to pierce the min band with a 5K motion, and the defendant asked the district court to depart below that 5K. The panel in Jackson said that the departure motion under ALD got you to a new minimum mandatory sentence, and that 3553A didn't permit departure from that new minimum mandatory sentence. In the briefing on the petition for rehearing, it's the exact same statutory construction argument offered here, which is 3553 offers an overarching sentencing scheme which permits a district court, even if a minimum mandatory applies, to impose a reasonable sentence, even if that goes below the minimum mandatory sentence. So it's not perfectly the same, but the argument, the statutory construction argument, is exactly identical. So for those reasons, I think it merits a determination there before we address it. Well, in this case, though, if we were to uphold the waiver of the appeal opportunity, why would we need to wait for Jackson? Well, I don't. One is 3553 creates a new statutory maximum under the parsimony principle. So under Jackson, if we agree that 3553 requires that a sentence is no greater than necessary, that's the new statutory maximum for that sentence. And in this case, the district court would have exceeded that new statutory maximum sentence. That's a new statutory maximum? That's correct, an alternative statutory maximum. What the Supreme Court said in Kimbrough is this is an overarching scheme, that under 3553A the court is required to impose a sentence that is no greater than necessary. That is the statutory maximum. You don't think that refers to what the statute provides as the maximum sentence? That's what I would have thought the statutory maximum means. I understand Your Honor's point, but based on the language in Kimbrough, I think it creates an alternative statutory maximum based on the idea that 3553A, the parsimony principle, is a provision. It's a mandatory provision. This is the last step that we take before we sentence a defendant. And that last step was a waiver case. In other words, did it construe a plea agreement in which the right to appeal is waived, or was it? No, I don't. So really what we're looking at here isn't the statute in an abstract form. It's what paragraph 23 of the plea agreement means when it says that your client gave up the right to appeal any sentence provided that it's within the statutory maximum. And so it's really what the statutory maximum then states as specified in paragraph 4. So really all we're looking at is whether the sentence here exceeds what is stated in paragraph 4. That's the meaning of the agreement. And it's not really an abstract question. Well, I respectfully disagree with the assessment that it's not really an abstract question because we also have to look at whether the sentence imposed was constitutional. And here Kimbrough says that this is an overarching mandatory sentencing precept, which the district court requires. Statutory. Even under your argument, it's statutory. It's not constitutional. Yes, that's true. I'm sorry, Your Honor. I guess what I'm struggling to see is why Jackson is even relevant because the defendant gives up the right to appeal any sentence imposed by the court, and then I'm going to leave out some words, provided that the sentence is within the statutory maximum specified in paragraph 4 above. Paragraph 4 says that the statutory maximum is life in prison plus a five-year period of supervised release, $4 million of fine, and a mandatory special assessment. Okay. So it incorporates that. So your client gave up the right to appeal the sentence if it's less than life in prison and a $4 million fine. Well, I think we also have to look at his appellate waiver. He does not give up his right to appeal a sentence which is unconstitutional. Okay, but that's a different question. I understand. And I have the same answer for that, and I don't want to repeat myself. Putting aside that issue, however, there are other issues in the brief that implicate constitutional concerns. One is the ineffective assistance of counsel that Mr. McFadden received when his attorney failed to show up for critical and difficult cooperation sessions. Those cooperation sessions represented his last and best hope for a sentence under 20 years, and his attorney simply was not there. The second issue that I think also implicates clearly constitutional concerns is the government's breach of that plea agreement in failing to evaluate. If we agree that there's breach. I mean, if there's no breach, then there's no constitutional implication. I agree with your point, Your Honor. So putting aside the 3553 argument and whether or not that creates a new statutory maximum based on Kimbrough, looking at just the two other constitutional claims, which are the breach and the ineffective assistance of counsel that Mr. McFadden received at the time of sentencing. What is your basis for the ineffective assistance of counsel claim other than the fact that the attorney wasn't at that meeting in Chicago? Well, I think this Court's language in Leontay is instructive at that point. Leontay is at the. But what's the factual basis for your claim other than the fact that the attorney wasn't at that meeting? That's it. The attorney wasn't at that. And that's why that record is complete for review here. And that, Your Honor, is your point. It's actually. The thrust of the government's argument on the ineffective assistance of counsel claim is that the record isn't complete. They don't really make an argument about prejudice. The record is complete. The issue is ripe because that is. Do we know why he wasn't there? We don't. But it doesn't matter because I think under these circumstances it's per se prejudicial. The client says I don't want him there. I don't think it matters. I don't. The government hasn't suggested any strategic benefit or. That's within an opportunity to really do that. That's their point. This is a direct appeal and not a post. Who has the burden anyway with respect to that? Well, I think that the burden here is ours to demonstrate that the record is complete. And because the basis of this claim is simply the fact that his attorney was absent, I point, Your Honors, to U.S. v. Garcia, 19F30. There this court reviewed that claim where the defendant's argument pertained solely to counsel's performance at a sentencing hearing. Other cases, U.S. v. Swanson, 943F2nd, 1072, also reviewed on direct appeal because the record was complete. And the government really doesn't make an argument about why this wasn't prejudicial to the defendant. And they can't based on Leonte, which establishes that among a competent attorney's duties includes facilitating communication between the defendant and the government, attending proper sessions, ascertaining the government's expectations and whether the defendant is satisfying them, communicating the defendant's limitations to the government, and establishing a record of the cooperation attempts. His absence didn't allow any of these duties to be fulfilled. And, naturally, the meetings went poorly. He sent his client into the lion's den without any protection. There's no possible way. You say lion. I'm not sure how you're spelling lion because part of the problem was lion throughout the whole thing. Anyway, you have about 30 seconds left. Do you want to say that? Yes, I do. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Elizabeth Yang on behalf of the United States. I'd like to address the ineffective assistance claim very briefly. The government maintains its position that the factual record is incomplete to have any sort of review. Meaningful review at this level for the exact reasons Your Honors pointed out. We don't know why defense counsel didn't attend the proper sessions in Oklahoma. We don't know if there had been prior communication with this client, if there had been an understanding or a decision made for why he should not be there. I'm struggling sort of conceptually with the following issue, and this does sort of run square into the Jackson issue. But if the sentence that he received, which was the 240 months, was in fact the minimum available sentence because it was the mandatory statutory minimum, why would there just as a matter of law be no prejudice because the lawyer being there could not have made the sentence any lower than the minimum? Your Honor, I would agree with that assessment, save for defense argument that the defendant could have been entitled to a sentence under the minimum pursuant to 18 U.S.C. 3553E had the government moved for a substantial assistance. And so there was that opportunity, and plus, of course, the supervised release conditions, and there were other things that might have been accounted for. Yes, Your Honor. So I believe that is the argument that sort of preserves that for the defense. The government would just like to note that in terms of the ineffective assistance claim, the record does need to be more fully developed. It is not unusual for defense lawyers to not attend every proffer session that their clients engage in with the government. And so there may be reasons why defense counsel did not go to Oklahoma, of which the parties are just unaware at this time. I would like to focus the remainder of the government's time on the defendant's arguments of bad faith and breach. The government agrees with the court that absent a finding that the government acted in bad faith and there was a breach of the plea agreement, the appellate waiver at paragraph 23 of the plea agreement is fully operative. The record is clear. The defendant entered into that plea agreement knowingly and voluntarily. He knowingly and voluntarily waived his appellate rights. He was sentenced well within the statutory maximum of life imprisonment, and thus he would waive his right to appeal his sentence. In this case, there has never been any allegation. There is no evidence, nor could there be, that the government's decision to not file a substantial assistance downward departure motion was based on an unconstitutional motive, such as the defendant's race or religion or some other impermissible factor. There is also no evidence, let alone specific evidence, that would support the defendant's required substantial threshold showing that the government's decision to not file a substantial assistance motion was for reasons bearing no rational relation to a legitimate government interest. And in this case, there were several legitimate government interests that the government took into consideration in deciding not to file a 5K motion for the defendant. Among those, ensuring that a cooperator is fully committed to cooperating. And that is a commitment that is primarily demonstrated by an individual giving a full account of his own criminal conduct, both charged and uncharged, as well as implicating others. And in this case, the record is clear that the defendant did not do that. He backtracked on basic information, such as his gang affiliation. He refused to confirm information he had previously provided to the government. He minimized his own criminal conduct, and he failed to disclose other criminal conduct which the government discovered through other means. Another legitimate government interest is deterring future defendants from being less than fully cooperative. Had the defendant in this case been rewarded with a 5K motion, given his attempts at cooperation, that would completely undermine the government's interest in ensuring full cooperation, and that future cooperators are also committed to divulging all information. And the other government concern is about the credibility, truthfulness, and reliability of cooperators. That is one of the factors under 5K1.1 that courts consider in determining how much of a sentence reduction once the government makes a 5K motion to give a defendant, and that is factor A2. And under the Supreme Court case of Wade v. United States, a government completely acts within its discretion in declining to file a 5K motion simply based on its rational assessment of the cost and benefit that would flow from making such a motion. A defendant attempts to claim that it has satisfied the substantial threshold showing that the government acted based on suspect reasons by the argument that the government failed to sufficiently investigate the information the defendant provided during the proper sessions. That is not bad faith. That does not amount to bad faith, Your Honors. First, there is no obligation for the government to conduct such an extrinsic investigation. At paragraph 20B of the plea agreement, at excerpts of record 353, it makes it clear the government is not required and doesn't promise that it's going to use any information the defendant provides or pursue it in any fashion. But in this case, the record demonstrates the government did. It not only pursued the information he provided in the proffers regarding the Oklahoma investigation, it pursued information he provided to another assistant United States attorney and determined whether that was productive at all in order to give the defendant, if in the government's exclusive judgment, substantial assistance. This is similar to the Flores case that a panel of this court decided in 2009 at 553. I'm sorry, 559F3, 1016. There it was undisputed by the parties, which is different than in this case, that the defendant provided truthful information to the government. At the time of sentencing, the information he had provided had not led to any arrests or indictments, and the government did not move for a 5K. Defendant claimed bad faith on the part of the government, in part because he claimed the failure for there to be any arrests or indictments was because the government didn't actively pursue the information he provided. And a panel of this court found no bad faith from the district court because it stated that, quote, the government fulfilled its limited obligation to timely assess the quality of the defendant's assistance, per Quach and Awad, in which the government is required to make its assessment prior to sentencing. And that is exactly what happened in this case. The government fully evaluated, in good faith, the information defendant provided in his proffer sessions and determined in its exclusive judgment, as it had reserved the right to do so in the plea agreement, which defendant agreed to, that he had not provided substantial assistance and did not merit a downward departure motion. And defendant cites no authority to counter that the government can rely on its own relative assessment of a cooperator's credibility and of the truthfulness and value of the information he or she provides. And this court has repeatedly found that the government is in the best position to make that assessment since the government is often most familiar with the facts of its investigations. With regard to breach, the express terms of the plea agreement did not obligate the government to accept the defendant's cooperation, did not obligate the government to credit any cooperation the defendant gave regardless of its value, and it never guaranteed that a 5K motion would be filed. Defendant argues in his reply that the government had promised that it would make such a motion. There is no such promise. There is no such guarantee in the plea agreement. The government faithfully and in good faith complied with its obligation in the plea agreement, and defendant's claims of breach and bad faith should be rejected. And unless the Court has any further questions, the government would submit on its answering brief. Well, thank you, Ms. Yang. Thank you. Ms. Anderson, you've got we'll give you a minute. Thank you. Well, the government asserts it is not unusual for defense attorneys to not accompany their clients to 5K sessions, and in my experience, it is unusual. And under these circumstances, it was irresponsible, but more importantly, it was ineffective. This was a client facing a 20-year minimum mandatory sentence. This was the critical juncture at which the government was going to decide whether or not to impose or to recommend cooperation in his case. Everything that had occurred beforehand when the attorney was present seemed to interest the government in the information he would provide. When he arrived in Oklahoma alone and unrepresented, that's when the cooperation sessions with the government went south, so to speak, Your Honor. So I don't think that we can we need to appreciate how important it was for his attorney to be present there. There is authority for the proposition that the government must make a good faith effort to investigate and evaluate the information provided. That's Flores 559F1016. I see your time is up. Boy, that went really fast. Thank you very much. The case just argued is submitted. Thank you, Ms. Anderson. Thank you, Ms. Yang.
judges: Scullin, Silverman, Graber